**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CELLULAR EXPRESS, INC. d/b/a** | ) | |
| **BOSTON COMMUNICATIONS GROUP** | ) | |
| **AND BOSTON COMMUNICATIONS** | ) | |
| **GROUP, INC.** | ) | |
| 55 Middlesex Turnpike | ) | |
| Bedford, MA 01730 | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SMITH BAGLEY, INC. d/b/a** | ) | |
| **CELLULAR ONE OF NORTH EAST** | ) | |
| **ARIZONA** | ) | |
| 2040 S Street, NW | ) | |
| Suite 200 | ) | |
| Washington, DC 20009 | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiffs, Cellular Express, Inc. d/b/a Boston Communications Group ("CXP") and

Boston Communications Group, Inc. ("BCGI"), by and through their attorneys, file this Complaint

against Defendant Smith Bagley, Inc. d/b/a CellularOne of Northeast Arizona ("Smith Bagley") and

allege as follows:

## NATURE OF ACTION

1.      This case arises out of Smith Bagley's breaches of a Prepaid Connection Agreement by

which Smith Bagley agreed to pay fees and charges to CXP in exchange for certain equipment, software,

and services related to the wireless telecommunications business.

2.      The agreement provides that, if any of the relevant equipment or software becomes subject to a claim of patent or copyright infringement, CXP may at its option procure for Smith Bagley the right to continue to use the equipment or software; Smith Bagley may not, in that event, terminate the agreement.

3.      Nonetheless, in February, 2006, Smith Bagley notified Plaintiffs that it was unilaterally terminating the agreement, citing an injunction that had been entered against BCGI but that had been stayed indefinitely.  Smith Bagley's breaches of the agreement have resulted in substantial damage to Plaintiffs.

## THE PARTIES

4.      CXP is a Massachusetts corporation with its principal place of business in Bedford, Massachusetts.  CXP is a wholly-owned subsidiary of BCGI and is in the business of providing mobile telecommunications billing services.

5.      BCGI is a Massachusetts corporation with its principal place of business in Bedford, Massachusetts.  BCGI is in the business of providing mobile telecommunications billing services.

6.      Defendant Smith Bagley is a private corporation registered in the District of Columbia with a principal place of business at 2040 S Street, NW in the District of Columbia and a business address at 1500 S. White Mountain Road, Show Low, Arizona 85901.  Smith Bagley is in the business of providing cellular mobile services.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Venue is appropriate pursuant to 28 U.S.C. § 1391(a) because Defendant Smith Bagley resides in this district.

## FACTUAL BACKGROUND

9.     On or about March 1, 2000, Plaintiffs (hereinafter, collectively, "BCGI") and Smith Bagley entered into the Prepaid Connection Agreement ("PCA") in which Smith Bagley agreed to purchase certain wireless systems and services from BCGI according to the terms provided in the PCA. The PCA (in redacted form) is attached hereto as Exhibit A.

10.    The charges and payment terms for BCGI's services and equipment included, among others, purchase pricing (including licensing), installation charges, technical service charges, additional equipment purchases, and recurring usage fees.

11.    Paragraph 14 of the PCA provided that, in the event of a "claim of infringement of any duly issued United States patent or copyright" involving equipment or software purchased under the PCA,

> BCGI at its option may: (i) procure for [Smith Bagley] the right to continue to use the Equipment or Software, (ii) replace or modify the Equipment or Software so that it is non-infringing; or (iii) if neither of the foregoing alternatives is reasonably practical, BCGI may remove the Equipment or software and refund the applicable Purchase Price and Installation Charge payments made to BCGI, reduced by an amount equal to the depreciated portion of the payments.

PCA ¶ 14.  The PCA further provided in Paragraph 14 that the foregoing three options formed "THE EXCLUSIVE REMEDY OF [SMITH BAGLEY] FOR INFRINGEMENT OR CLAIMS OF INFRINGEMENT OF ANY THIRD PARTY PATENT, COPYRIGHT, OR OTHER INTELLECTUAL PROPERTY RIGHT BY THE EQUIPMENT OR SOFTWARE."  *Id.* (emphasis in original).

12.    Paragraph 17(d) of the PCA provided that it "constitutes the entire agreement between BCGI and Customer" and "may be amended, terminated, or altered only by an instrument in writing." PCA ¶ 17(d).  None of the above-referenced provisions has been amended, terminated, or altered.

13.    The PCA had a term of two years, subject to automatic renewal for additional two-year periods unless Smith Bagley provided notice of non-renewal at least 120 days prior to the end of the two-year term.  PCA ¶ 3.

14.    On or about March 30, 2001, just more than one year into the two-year term of the PCA, BCGI and Smith Bagley entered into an Addendum to Prepaid Connection Agreement ("First Extension").  The First Extension extended the term of the PCA by three years, until March 1, 2004, and left in place the automatic renewal provision.

15.    The PCA, as amended by the First Extension, specifically provided, "During the Term of this Agreement, BCGI will be the exclusive provider of prepaid wireless services to [Smith Bagley] and [Smith Bagley] will not contract with or receive prepaid wireless services from any other prepaid wireless provider."

16.    On July 24, 2001, after extending the term of the PCA in the First Extension, Melissa Covington of Smith Bagley sent a letter to BCGI that provided, in part:  "We have been using *bcgi's* Prepaid Connection platform for more than a year now and would like to express how pleased we are with its performance.  Our prepaid wireless programs are enjoying phenomenal acceptance and growth,

and *bcgi's* prepaid platform and client support of this growth has been commendable."  The letter continued:  "Overall, we made a great decision to switch from a metered billing solution to *bcgi's* real-time Prepaid Connection product."

17.     On or about August 12, 2002, well before the scheduled expiration of the PCA, BCGI and Smith Bagley entered into another Addendum to Prepaid Connection Agreement ("Second Extension"), which extended the term of the PCA an additional year, until March 1, 2005, and reiterated the automatic renewal provision.

18.     BCGI and Smith Bagley entered into two additional addenda extending the term of the PCA:  The first, executed in early 2004, extended the PCA until March 1, 2006 ("Third Extension"), and the second, executed on or about June 21, 2004, extended the PCA until March 1, 2009 ("Fourth Extension").  Neither the Third Extension nor the Fourth Extension altered or modified any of the original terms relating to termination of the PCA.

19.     In 2000, Freedom Wireless, Inc. filed a patent infringement action in the United States District Court for the District of Massachusetts against BCGI and a number of BCGI's customers, claiming that BCGI's prepaid connection platform infringed on its patented technology (the "Patent Litigation").  Neither Smith Bagley nor CXP filed an appearance in the Patent Litigation.

20.     BCGI vigorously defended itself in the Patent Litigation, but on or about May 20, 2005, a jury found infringement and awarded Freedom Wireless substantial damages.

21.     Following the jury trial, BCGI attempted unsuccessfully through a bench trial on its affirmative defenses and numerous post-trial motions to vacate or reduce the jury verdict.

22.     On or about October 12, 2005, the District Court entered an injunction (the "Injunction") prohibiting BCGI "from making, using, selling, or offering to sell the prepaid wireless service

implementations—multi-frequency (MF), common channel signaling system seven (SS7), and pre-intelligent network (pre-IN)—found to infringe Plaintiff Freedom Wireless, Inc.'s patents."

23.     The Injunction further provided "a 'grace period' of 90 days from today's date [October 12, 2005], during which defendants are prohibited from adding any new prepaid customers, for defendants' customers to use the remainder of their prepaid balances and find an alternative carrier." Thus, the Injunction was not to go into effect for existing customers, including Smith Bagley, until January 10, 2006.

24.     On or about October 20, 2005, BCGI noticed an appeal to the United States Court of Appeals for the Federal Circuit.

25.     On or about November 14, 2005, BCGI filed an emergency motion with the Federal Circuit to stay the Injunction pending the appeal.

26.     The next day, on November 15, 2005, the Federal Circuit temporarily stayed the Injunction.  On December 15, 2005, the Federal Circuit extended the stay for the pendency of the appeal.

27.     On December 19, 2005, BCGI advised Smith Bagley in writing that the Injunction had been stayed pending the appeal.  BCGI also included in its communication a third-party analyst report titled, "Boston Communications Group, Inc.—A New Lease on Life."  By email dated December 20, 2005, Smith Bagley's Chief Executive Officer acknowledged receipt of the BCGI communication.

28.     Despite being aware of the stay issued by the Federal Circuit and the fact that BCGI was permitted to continue providing services to its customers without interruption, six weeks later, on or about February 2, 2006, Smith Bagley's counsel wrote to BCGI stating that, in light of the Injunction, it unilaterally was terminating the PCA as of January 31, 2006 ("Termination Letter").

29.    Although the Termination Letter is dated January 17, 2006, it was not received by BCGI until *after* the purported January 31 termination date, when BCGI's operations center noticed a dramatic drop in telecommunications traffic from Smith Bagley.  Upon inquiry by BCGI, Smith Bagley informed BCGI that it had commenced migration of its customers to a new company's system.

30.    On February 3, 2006, counsel for BCGI responded to the Termination Letter by facsimile and certified mail, stating that the Injunction had been stayed and therefore was of no current force or effect, a fact that had been clearly communicated to Smith Bagley on December 19, 2005.  Counsel requested that Smith Bagley confirm, within five business days, that it had restored its service relationship with BCGI.

31.    Smith Bagley did not respond to BCGI's February 3, 2006 letter and has never cured its breach.  On information and belief, Smith Bagley replaced BCGI's services with VeriSign Inc., reportedly a less expensive service provider.

32.    At the time of Smith Bagley's breaches of the PCA, BCGI was realizing approximately $280,000 per month in net revenues from services provided to Smith Bagley pursuant to the PCA.  As of January 31, 2006, approximately 37 months remained until the earliest possible termination of the PCA.  Upon information and belief, subsequent to its breach of the PCA, Smith Bagley's prepaid cellular mobile business improved materially and, absent the breach, would have resulted in increased net revenues for BCGI pursuant to the PCA.

33.    In July 2006, the parties to the Patent Litigation entered into a settlement agreement (the "Global Settlement"), which was contingent on the trial court's vacatur of orders (including the Injunction) and the judgment against BCGI.

34.     Through the Global Settlement, BCGI also acquired licenses from Freedom Wireless to use the technology that had been the subject of the Patent Litigation.  The licenses expressly permitted use of the technology by BCGI's customers (including Smith Bagley), partners, and suppliers.

35.     By securing first a stay of the Injunction, then vacatur of the Injunction, and finally the licenses from Freedom Wireless, BCGI exercised its option under the PCA to "procure for [Smith Bagley] the right to continue to use the Equipment or Software."  BCGI's services to its customers continued without interruption during the entirety of the Patent Litigation.

36.     On October 12, 2006, the District Court vacated the Injunction, thereby completing the Global Settlement and resulting in dismissal of the Patent Litigation.

## COUNT I
## BREACH OF CONTRACT

37.     BCGI repeats and realleges and incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

38.     The PCA was a valid and enforceable agreement between BCGI and Smith Bagley.

39.     By terminating the PCA on or about January 31, 2006, Smith Bagley breached the terms of the PCA, as amended, which was not scheduled to terminate until March 1, 2009 at the earliest.

40.     By contracting with a service provider other than BCGI prior to March 1, 2009 to replace services provided by BCGI, Smith Bagley breached the exclusivity term of the PCA.

41.     Smith Bagley's breaches of the PCA have directly and proximately caused BCGI to suffer damages.

## COUNT II
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

42.    BCGI repeats and realleges and incorporates by reference paragraphs 1 through 41 as though fully set forth herein.

43.    On information and belief, Smith Bagley used the Injunction as a pretext to stop using BCGI's services and to contract with a less expensive provider, despite its contractual obligations.

44.    By engaging in the acts described above, Smith Bagley breached the covenant of good faith and fair dealing implicit in the PCA.

45.    As a direct and proximate result of Smith Bagley's breach of the covenant of good faith and fair dealing, BCGI has suffered and continues to suffer damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Enter a judgment for Plaintiffs and against Defendant on all Counts of this Complaint;

B.    Order Defendant to pay an award of compensatory and consequential damages, doubled or trebled, in an amount to be determined at trial; and

C.    Grant such other and further relief as the court may deem just and proper, including, but not limited to, payment of Plaintiffs' reasonable costs and attorneys' fees.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable that are raised in the Complaint.

Respectfully submitted,

_____
Mark London          #293548
Christopher B. Mead  #411598
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334
*Counsel for Plaintiffs*

April 16, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CELLULAR EXPRESS, INC. D/B/A BOSTON COMMUNICATIONS GROUP AND BOSTON COMMUNICATIONS GROUP, INC. | SMITH BAGLEY, INC. D/B/A CELLULAR ONE OF NORTHEAST ARIZONA |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | 88888 | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|---|

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark London
Christopher B. Mead
London & Mead
1225 19th Street, NW
Suite 320
Washington, D.C. 20036

Case: 1:07-cv-00694
Assigned To : Walton, Reggie B.
Assign. Date : 4/16/2007
Description: CELLULAR EXPRESS v. BAGLEY INC.

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. Antitrust

☐ 410 Antitrust

○ B. Personal Injury/ Malpractice

☐ 310 Airplane

○ C. Administrative Agency Review

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ F. Pro Se General Civil

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

Court Name: District of Columbia
Division: 1
Receipt Number: 4615003630
Cashier ID: dcallis
Transaction Date: 04/17/2007
Payer Name: LONDON MEAD

CIVIL FILING FEE
For: LONDON MEAD
Amount:      $350.00

CHECK
Check/Money Order Num: 6212
Amt Tendered: $350.00

Total Due: $350.00
Total Tendered: $350.00
Change Amt: $0.00

07-0694

Only when the bank clears the
check, money order, or verifies
credit of funds is the fee or debt
officially paid or discharged. A
$45 fee will be charged for a
returned check.

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ | Check YES only if demanded in complaint<br>**JURY DEMAND:**   YES ☒   NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE **4/16/07**    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.