## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CELLULAR EXPRESS, INC. d/b/a | ) | |
| BOSTON COMMUNICATIONS GROUP | ) | |
| AND BOSTON COMMUNICATIONS | ) | |
| GROUP, INC. | ) | |
| | ) | |
|     Plaintiffs, | ) | CIVIL ACTION NO: 07-694 (rbw) |
| | ) | |
|     v. | ) | |
| | ) | |
| SMITH BAGLEY, INC. d/b/a | ) | |
| CELLULAR ONE OF NORTHEAST | ) | |
| ARIZONA | ) | |
| | ) | |
|     Defendant. | ) | |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Cellular Express, Inc. d/b/a Boston Communications Group and Boston Communications Group, Inc. (collectively, "BCGI"), by and through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Partial Summary Judgment.

### INTRODUCTION

This case involves a dispute between BCGI and Defendant Smith Bagley, Inc. d/b/a Cellular One of Northeast Arizona ("Smith Bagley") over a Prepaid Connection Agreement ("PCA") entered into by the parties in March 2000. Smith Bagley contracted in the PCA to purchase from BCGI certain equipment, software, and services related to wireless telecommunications. Contemplating that BCGI's equipment or software might become subject to a claim of patent infringement, the parties expressly contracted for the remedies available in such an event. According to the PCA, BCGI had the right: (1) to procure for Smith Bagley the ability to use the infringing equipment or software; (2) to replace such equipment or software

1

with non-infringing equipment or software; or (3) if neither of the first two options were "reasonably practical," to terminate the PCA and refund any applicable charges. The PCA further provided that BCGI's three options were "the exclusive remedy" available to either party in the event of a claim of infringement.

Smith Bagley eschewed the plain and unmistakable terms of the contract, and unilaterally terminated the PCA on January 31, 2006, with more than three years remaining on the contract. Smith Bagley cited as the reason for its termination a patent-infringement lawsuit filed against BCGI in early 2000. But this putative rationale was entirely without legal basis: The patent-infringement lawsuit did not impede BCGI's provision of services to Smith Bagley, and termination by Smith Bagley was not an available remedy pursuant to the PCA. Because Smith Bagley's unilateral termination was a breach of the PCA, and because there are no material facts in dispute that would prevent a finding of breach as a matter of law, BCGI is entitled to summary judgment as to its breach-of-contract claim.

## FACTUAL BACKGROUND

### I.      The Prepaid Connection Agreement

BCGI is in the business of providing mobile telecommunications billing services. Statement of Material Facts as to Which There is No Genuine Issue ["Statement"] ¶ 1. Smith Bagley is in the business of providing cellular mobile services, as well as network and data services. *Id.* ¶ 2. On or about March 1, 2000, BCGI and Smith Bagley entered into the PCA, pursuant to which Smith Bagley agreed to purchase "equipment, software, and services" from BCGI. *Id.* ¶ 3. BCGI's services permitted Smith Bagley "to offer prepaid wireless service to their subscribers and take advantage of the Prepaid Wireless features and the national network

for roaming." *Id.* ¶ 4.  The PCA had an original term of two years, subject to automatic renewal

for additional two-year periods.  *Id.* ¶ 5.  The PCA provided that it was governed by

Massachusetts law.  *Id.* ¶ 6.

> The parties, as evidenced by the PCA, contemplated that BCGI's software and

services might become the subject of a patent-infringement claim, and contracted for the

remedies available to the parties in the event such a claim were made.  Paragraph 14 expressly

provided that, in the event of a "claim of infringement of any duly issued United States patent or

copyright" involving equipment or software purchased under the PCA,

> BCGI at its option may: (i) procure for [Smith Bagley] the right to
> continue to use the Equipment or Software, (ii) replace or modify
> the Equipment or Software so that it is non-infringing; or (iii) if
> neither of the foregoing alternatives is reasonably practical, BCGI
> may remove the Equipment or software and refund the applicable
> Purchase Price and Installation Charge payments made to BCGI,
> reduced by an amount equal to the depreciated portion of the
> payments.

*Id.* ¶ 7.  Paragraph 14 further provided that the foregoing three options formed "THE

EXCLUSIVE REMEDY OF [SMITH BAGLEY] FOR INFRINGEMENT OR CLAIMS OF

INFRINGEMENT OF ANY THIRD PARTY PATENT, COPYRIGHT, OR OTHER

INTELLECTUAL PROPERTY RIGHT BY THE EQUIPMENT OR SOFTWARE."  *Id.*

(emphasis in original).  By its plain terms, therefore, the PCA did not permit Smith Bagley to

terminate the PCA if BCGI exercised one of the three options prescribed in Paragraph 14.

> On or about March 30, 2001, just more than one year into the two-year term of

the PCA, BCGI and Smith Bagley entered into an Addendum that extended the PCA by three

years, until March 1, 2004, and left in place the automatic renewal provision.  *Id.* ¶ 9.  This

Addendum also provided that, "[d]uring the Term of this Agreement, BCGI will be the exclusive provider of prepaid wireless services to [Smith Bagley] and [Smith Bagley] will not contract with or receive prepaid wireless services from any other prepaid wireless provider." *Id.* ¶ 10.[1] The parties extended the term of the PCA three more times, with the last of the extensions running until March 1, 2009. *See id.* ¶ 9. Each time, the parties reiterated the PCA's automatic renewal provision. *See id.*

## II.    The Patent Litigation

On March 30, 2000, Freedom Wireless, Inc. filed a patent-infringement lawsuit against BCGI and a number of other telecommunications-services providers and users. *Id.* ¶ 11. BCGI vigorously defended itself at trial, but on May 20, 2005, a jury found infringement. *Id.* ¶ 12. Following the jury trial, BCGI attempted through a bench trial on its affirmative defenses and numerous post-trial motions to vacate or reduce the jury verdict. *Id.* ¶ 13. BCGI's efforts in the trial court were ultimately unsuccessful, however, and on September 1, 2005, judgment was entered against BCGI. *Id.* ¶ 14.

On October 12, 2005, the U.S. District Court for the District of Massachusetts enjoined BCGI "from making, using, selling, or offering to sell the prepaid wireless service implementations—multi-frequency (MF), common channel signaling system seven (SS7), and pre-intelligent network (pre-IN)—found to infringe Plaintiff Freedom Wireless, Inc.'s patents" ("the Injunction"). *Id.* ¶ 15. The Injunction further provided "a 'grace period' of 90 days from

---

[1]    Paragraph 17(d) provided that the PCA "constitutes the entire agreement between BCGI and [Smith Bagley]" and "may be amended, terminated, or altered only by an instrument in writing." Statement ¶ 8. Although the parties executed several subsequent addenda to the PCA, they did not alter the remedies provision in Paragraph 14 or the exclusivity provision in

today's date [October 12, 2005], during which defendants are prohibited from adding any new prepaid customers, for defendants' customers to use the remainder of their prepaid balances and find an alternative carrier." *Id.* ¶ 16. Thus, the Injunction did not have any immediate effect on BCGI's ability to service its existing customers, including Smith Bagley, and would not have any effect until January 10, 2006, at the earliest. *Id.* ¶ 17.

BCGI filed a motion with the trial court to stay the Injunction, and on October 20, 2005, it noticed an appeal to the United States Court of Appeals for the Federal Circuit. *Id.* ¶ 18. The District Court denied the motion to stay the Injunction, and on November 14, 2005, BCGI filed an emergency motion with the Federal Circuit to stay the Injunction pending appeal. *Id.* ¶¶ 19–20. The Federal Circuit granted a temporary stay the following day—November 15, 2005— and on December 15, 2005, the court extended the stay for the pendency of the appeal. *Id.* ¶¶ 21–22. Accordingly, the Injunction was stayed long before the expiration of the 90-day "grace period."

In July 2006, while the appeal was pending before the Federal Circuit, and while the stay of the Injunction was in effect, BCGI and Freedom Wireless entered into a settlement agreement contingent on the trial court's vacatur of the Injunction and the judgment against BCGI. *Id.* ¶ 30. As part of the settlement, BCGI acquired licenses from Freedom Wireless to use the infringing technology. *Id.* ¶ 31. These licenses expressly permitted use of the technology by BCGI's customers (including Smith Bagley), partners, and suppliers. *Id.* In view of the parties' settlement, on October 12, 2006, the District Court vacated the Injunction and the judgment against BCGI. *Id.* ¶ 32.

---

Paragraph 1 of the March 1, 2001 addendum.

### III.     Smith Bagley's Unilateral Termination of the PCA

On December 19, 2005, several days after the Federal Circuit stayed the Injunction during the pendency of the appeal, BCGI forwarded Smith Bagley an e-mail regarding the Federal Circuit's order. *Id.* ¶ 23.  The December 19 e-mail also included a third-party analyst report titled, "Boston Communications Group, Inc.—A New Lease on Life," which referenced the Federal Circuit's stay. *Id.*  Smith Bagley's Chief Operations Officer, Richard Watkins, acknowledged receipt of the e-mail the next day, December 20, 2005. *Id.* ¶ 24.

Despite being aware of the stay issued by the Federal Circuit, and without notice to BCGI, Smith Bagley began migrating its customers to VeriSign Inc., another and less expensive provider of wireless telecommunications services and products.  On February 2, 2006, BCGI's Network Operations Center noticed a dramatic drop in telecommunications traffic from Smith Bagley. *Id.* ¶ 25.  Upon inquiry from BCGI, the Smith Bagley switch tech informed the BCGI Network Operations Center that they expected this behavior as they were currently moving facilities to their new prepaid platform. *Id.*  In immediate follow-up, BCGI's Client Relations liaison to Smith Bagley, Tim Quinlivan, spoke with Mr. Watkins to inquire about the drop-off, and Mr. Watkins responded by forwarding a pdf copy of a letter announcing that Smith Bagley was unilaterally terminating the PCA effective January 31. *Id.* ¶¶ 26–27.  On February 3, counsel for BCGI responded to the termination letter by facsimile and certified mail, reminding Smith Bagley that the Injunction was of no effect and requesting that Smith Bagley confirm, within five business days, that it had restored its service relationship with BCGI. *Id.* ¶ 28.  Smith Bagley did not respond to the February 3 letter.  Instead, it proceeded to terminate the PCA and to replace BCGI's services with those of VeriSign Inc. *Id.* ¶ 29.

## ARGUMENT

### I.      Governing Legal Standards

Fed. R. Civ. P. 56 provides that a party is entitled to judgment as a matter of law when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Summary judgment is particularly appropriate when "the unresolved issues are primarily legal rather than factual."  *Wyoming Outdoor Council v. Dombeck*, 148 F. Supp.2d 1, 7 (D.D.C. 2001).

To prevail on a breach of contract claim under Massachusetts law, a party must show "(1) that there is a contract, (2) that the party performed its obligations under the contract (or is excused from performance), (3) that the other party breached the contract, and (4) that the nonbreaching party suffered damages as a result of the breach of contract."  Mass. Super. Ct. Civil Practice Jury Inst. § 14.1.19; *see also Lorandger Const. Corp. v. E. F. Hauserman*, *Co.*, 294 N.E.2d 453, 453 (Mass. App. 1973) (calling for "an agreement, breach and the resulting damages").  Contract interpretation is a matter of law when the terms being applied are unambiguous.  *Cabot Corp. v. AVX Corp.*, 863 N.E.2d 503, 506 (Mass. 2007).

### II.     BCGI Is Entitled to Judgment as a Matter of Law on Its Breach-of-Contract Claim

BCGI is entitled to judgment as a matter of law on its breach-of-contract claim. The applicable terms of the PCA are unambiguous and therefore susceptible to only one interpretation as a matter of law, and there is no genuine issue of material fact that BCGI performed its obligations under the PCA and that Smith Bagley breached the PCA.

## A.  BCGI Performed its Obligations Under the PCA

It is beyond dispute that BCGI performed its obligations under the PCA and at all times provided to Smith Bagley the contracted-for equipment, software, and services.  When faced with a claim for patent infringement concerning the equipment, software, and services being provided to Smith Bagley, BCGI exercised the exclusive remedies available to it pursuant to the PCA and never ceased providing the contracted-for equipment, software, and services.  After the jury found infringement and the trial court issued an injunction (which provided a 90-day grace period), BCGI sought and obtained a stay from the Federal Circuit during the pendency of the appeal.  Moreover, while the stay was in effect, BCGI secured from Freedom Wireless a license permitting it to continue providing the same equipment, software, and services to Smith Bagley under the PCA, and settled the patent litigation, leading to permanent vacatur of the Injunction.  During and after the litigation, BCGI provided uninterrupted service to its customers, including Smith Bagley.

As a matter of law, BCGI fulfilled its obligations under the PCA.  The PCA unambiguously provided that, in the event of a "claim of infringement of any duly issued United States patent or copyright" involving equipment or software purchased under the PCA, BCGI "at its option" could:  (1) procure for Smith Bagley the right to use the equipment or software; (2) replace or modify the equipment or software so it was no longer infringing; or (3) terminate the relationship and offer a partial refund.  Statement ¶ 7.  BCGI acted in full conformity with the PCA.  As set forth above, BCGI secured a license permitting it to continue providing to Smith Bagley the equipment, software, and services contracted-for in the PCA, and its provision of such equipment, software, and services was never interrupted by the claim of patent

8

infringement.  As a matter of law, then, BCGI has satisfied this prong of its breach-of-contract claim.

### B.  Smith Bagley Breached the PCA

It likewise is beyond dispute that, as a matter of law, Smith Bagley breached the PCA by unilaterally and without basis terminating the contract.  In its letter notifying BCGI of the termination, Smith Bagley claimed that the termination was due to "recent events in your litigation with Freedom Wireless." *Id.* ¶ 27.  This putative basis for the termination was without merit as a matter of law.

By its plain and unambiguous terms, the PCA did not permit Smith Bagley to unilaterally terminate in the event of an infringement claim.  The PCA provided that BCGI's three options in Paragraph 14 of the Agreement were the "exclusive remedy . . . for infringement or claims of infringement." *Id.* ¶ 7.  Paragraph 14 of the PCA is susceptible of only one meaning:  Smith Bagley was compelled to accept BCGI's decision to secure a license and could not terminate the Agreement. *See Charland v. Muzi Motors, Inc.*, 631 N.E.2d 555, 558 (Mass. 1994) (statute declaring that "procedure provided in this chapter shall . . . be exclusive" provides sole remedy).  As a matter of law, then, Smith Bagley's manifest refusal to adhere to Paragraph 14 constituted a breach of the PCA.

Smith Bagley cannot justify its termination on the ground that BCGI breached the agreement by providing infringing products and software.  BCGI fulfilled its obligations under the PCA, and the Injunction never took effect for BCGI's customers.  It is uncontroverted that, at the time it terminated the PCA, Smith Bagley was aware that the Injunction had been stayed during the pendency of the appeal:  Not only did BCGI notify Smith Bagley that the Injunction

was of no effect, but Smith Bagley waited until three weeks **after** what would have been the 90-day "grace period" to migrate its customers to another service provider. *See* Statement ¶¶ 16–17, 27. Smith Bagley cannot, therefore, claim to have anticipatorily repudiated because it feared a breach by BCGI. *See Northern Heel Corp. v. Compo Indus.*, 851 F.2d 456, 460–61 (1st Cir. 1988) (repudiating party had "neither requested clarification nor asked [the other party] to respond to its emerging concerns"; repudiation thus was improper under Massachusetts law because no material breach had occurred).

Nor can Smith Bagley justify its termination on the ground that the Injunction prevented it from fulfilling its contractual duties. Although a party may be able to avoid a contractual obligation in the event of impossibility or impracticability, *see* Restatement (Second) of Contracts § 264, here the Injunction was stayed and performance was not impossible or impracticable; indeed, BCGI's service to its customers, including Smith Bagley, proceeded without any interruption. *See Landis v. Hodgson*, 706 P.2d 1363, 1369 (Idaho 1985) (upholding lessee's impossibility defense where state took over property, but mandating payment to lessor for period of time before state legally took over); *J.J. Cassone Bakery, Inc. v. Consolidated Edison Co. of N.Y., Inc.*, 638 N.Y.S.2d 898, 903 (N.Y. Sup. Ct. 1996) ("Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible."); *cf. Webster v. Southern Cal. First Nat'l Bank*, 137 Cal. Rptr. 293, 294 (Cal. App. 1977) (restraining order not sufficient excuse to support impossibility defense where defendant made no reasonable efforts to prevent it or procure its dissolution); *Peckham v. Indus. Sec. Co.*, 113 A. 799, 802 (Del. Super. Ct. 1921) (same). Accordingly, an "impossibility" defense is not available as a matter of law.

10

This is particularly so because the parties to the PCA expressly foresaw, at the time of contracting, circumstances that could render performance impossible or impracticable, and contracted for how they would handle such circumstances.  This is a critical factor in assessing a purported "impossibility" defense:

> Was the contingency which developed one which the parties could reasonably be thought to have foreseen as a real possibility which could affect performance? Was it one of that variety of risks which the parties were tacitly assigning to the promisor by their failure to provide for it explicitly?  If it were, performance will be required.  If it could not be so considered, performance is excused.

*Mishara Construction Co., Inc. v. Transit-Mixed Concrete Corp.*, 310 N.E.2d 363 (Mass. 1974); *see also J.J. Cassone Bakery, Inc.*, 638 N.Y.S.2d at 903 ("[T]he impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract."); *Kel Kim Corp. v. Central Markets, Inc.*, 131 A.D.2d 947, 949 (N.Y. App. 1987) (inability to obtain liability insurance on property was foreseeable and risk should be borne by party who agreed to obtain it).  Here, not only was a claim of infringement against BCGI foreseeable at the time of contracting, but the parties **expressly contemplated** such a possibility and specified in their contract precisely what the exclusive remedies were in the event such a claim were made. There is no genuine issue of material fact concerning Smith Bagley's awareness of the stay of the Injunction, *see* Statement ¶¶ 23–24,[2] and an impossibility defense therefore is not available as a matter of law.  *See Glens Falls Indemnity Co. v. Perscallo*, 216 P.2d 567, 569 (Cal. App. 1950) (impossibility is a legal determination); *cf. Northern Heel Corp.*, 851 F.2d at 460–61 (holding that lawful repudiation defense failed as a matter of law).

---

[2]     Summary judgment would be appropriate even if Smith Bagley did not know of the stay, since it was obligated under the PCA to permit BCGI the option of securing a license or

In view of the foregoing, as a matter of law Smith Bagley breached the PCA, and BCGI therefore is entitled to judgment as a matter of law on its breach-of-contract claim.

## **CONCLUSION**

For the foregoing reasons, BCGI respectfully requests that partial summary judgment on liability be granted in its favor.

Respectfully submitted,

/s Christopher B. Mead
Mark London (D.C. Bar No. 293548)
Christopher B. Mead (D.C. Bar No. 411598)
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036
(202) 331-3334
*Counsel for Plaintiffs*

Dated: September 28, 2007

providing replacement software within the 90-day "grace period." *See id.* ¶ 7.