**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CELLULAR EXPRESS, INC. d/b/a BOSTON COMMUNICATIONS GROUP and BOSTON COMMUNICATIONS GROUP, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:07-cv-00694 (RBW)** |
| **SMITH BAGLEY, INC. d/b/a CELLULAR ONE OF NORTHEAST ARIZONA,** | |
| **Defendant.** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO DISMISS THE COUNTERCLAIM**

Plaintiff Cellular Express, Inc. d/b/a Boston Communications Group and Boston Communications Group, Inc. ("BCGI"), by and through counsel, hereby submits this Memorandum in Support of Plaintiff's Motion to Strike, or in the Alternative, to Dismiss the Counterclaim ("Counterclaim") of Defendant Smith Bagley, Inc., d/b/a Cellular One of Northeast Arizona ("Smith Bagley"), and states as follows:

## I.
## INTRODUCTION

Almost two years after filing its Answer in this case, Smith Bagley now files what can only be categorized as a *compulsory* Counterclaim. These counterclaims are not only untimely pursuant to Fed. R. Civ. P. 13(a), but they are barred by the applicable statute of limitations. In addition, Smith Bagley's contention that BCGI never had the "legal right" to perform under the parties' Prepaid Connection Agreement ("PCA"), which underlies the entire Counterclaim, is

untenable and contrary to law.  Moreover, Smith Bagley simply has no sustainable damages theory, as, among other things: (1) it received and enjoyed all the benefits it bargained for; and (2) any other potential damages have been expressly disclaimed by unambiguous contract terms.

As more fully set forth below, Smith Bagley's Counterclaim should be stricken or dismissed for at least the following reasons:

- First, Defendant's compulsory counterclaims were not filed in May 2007 as part of the Defendant's initial pleading, and Defendant never sought an extension from the Court to defer the filing of such compulsory counterclaims.

- Second, Defendant's counterclaims are time-barred.  Defendant concedes that its contract and tort claims accrued no later than December 2005, more than three (3) years before counterclaims were filed. The applicable statute of limitations for all of the counterclaims is three years and, therefore, the window for filing these counterclaims is closed.

- Third, Smith Bagley's claim that BCGI never had the "legal right" to perform under the contract has no basis in law, and, in fact, misconstrues applicable law on this topic.  Smith Bagley cannot create a legal obligation where none exists, so Smith Bagley's Counterclaim cannot stand.

- Fourth, Smith Bagley has no viable damages theory, a required element of all of its claims.  Smith Bagley does not and cannot deny that it received the benefits of BCGI's performance and there is no allegation that the software did not operate as required.  Furthermore, any other consequential damages associated with the termination are expressly disclaimed by contract.

As the Counterclaim suffers from these and the additional defects more fully set forth below, Plaintiff respectfully requests that this Court dismiss the Counterclaim with prejudice.

## II.
## BACKGROUND

### A.    The Parties Enter Into An Agreement

BCGI is in the business of providing mobile telecommunications billing services, and Smith Bagley is in the business of providing cellular mobile services, as well as network and data services.  Counterclaim ¶6-7; Stipulation of Material Facts filed by the parties on August 29, 2007 ("Stipulation") ¶¶ 1-2.  On or about March 1, 2000, the parties entered into a Prepaid

Connection Agreement ("PCA"), which was amended several times.  Counterclaim ¶¶ 8, 15; Stipulation ¶¶ 3-4.  Smith Bagley agreed that BCGI would be its exclusive provider of prepaid connection services until the PCA expired on March 1, 2009.  *See* Ex. A (PCA) Addendum dated March 30, 2001, § 10 (providing for exclusivity); Addendum to PCA, dated June 24, 2004 (extending term of the PCA to March 1, 2009).  A copy of the PCA is attached as Exhibit "A."[1]

Aware that a patent infringement action could be filed by a third party related to the technology BCGI was to provide under the PCA, the parties expressly contemplated and agreed to procedures that would cover such a circumstance.  *Id.* at § 14.

## B.   After The PCA Is Signed, BCGI Is Sued For Patent Infringement By A Third Party

In 2000, Freedom Wireless, Inc. ("Freedom Wireless") filed a patent infringement action against BCGI and a number of other companies.  Counterclaim ¶ 9; Stipulation ¶ 5.  BCGI vigorously contested the allegations, but in May 2005, a jury found that BCGI had infringed the Freedom Wireless patents, and, following additional motions from BCGI, judgment was entered by the Court against BCGI on September 1, 2005.  *See* Counterclaim ¶ 23; Stipulation ¶¶ 6-8.  On or about October 12, 2005, the District Court entered an order for injunctive relief with a grace period of ninety (90) days.  Counterclaim ¶¶ 24, 26; Stipulation ¶¶ 9-10.  As contemplated in the PCA, during the grace period, BCGI was able to secure both temporary and permanent stays (during the pendency of BCGI's appeal) of the injunction and, therefore, at no time was Smith Bagley deprived of receiving the benefits of the PCA or providing services to its customers.  *See* Counterclaim ¶¶ 28-29; Stipulation ¶¶ 11-15.  In July 2006, during the pendency of the appeal, BCGI and Freedom Wireless entered into a settlement agreement and the judgment against BCGI was vacated in October 2006.  *See* Counterclaim ¶ 33; Stipulation ¶ 22.  To this

---

[1] The PCA has not been contested by either party and is, in fact, referenced by Smith Bagley in its Counterclaim. *See, e.g.,* Counterclaim ¶¶ 8, 11-13, 15.

day, there has never been a final judgment of patent infringement entered against BCGI or its customer Smith Bagley.

As part of the July 2006 settlement, BCGI acquired licenses from Freedom Wireless to use the technology which expressly permitted use of the technology by BCGI's customers (including Smith Bagley), partners, and suppliers. *See* Statement of Material Facts as to Which There is No Genuine Issue, filed with Plaintiff's Motion for Summary Judgment filed on September 28, 2007, ¶¶ 30-31. Nevertheless, Smith Bagley terminated the PCA by letter dated January 17, 2006, well after the permanent stay of the injunction issued by the Federal Circuit on December 15, 2005. *See* Counterclaim ¶ 31; Stipulation ¶¶ 15, 18.[2]

Smith Bagley claims that it had no knowledge of the Freedom Wireless lawsuit for the majority of the term of the PCA. Even assuming that is true for purposes of this Motion, Smith Bagley certainly had knowledge on December 20, 2005 (when it acknowledged receipt of email from BCGI regarding the permanent stay of the injunction).[3] Stipulation ¶ 17. In fact, according to Smith Bagley's Counterclaim, it had knowledge of the case much earlier that Fall, when it began seeking a new provider. *See* Counterclaim ¶ 27; *see also* Counterclaim ¶ 21 (citing to Freedom Wireless, Inc.'s suit against Smith Bagley directly in 2005); ¶ 22 (BCGI notifying Smith Bagley of the patent suit against Smith Bagley).

---

[2] The parties dispute the date that the letter was actually sent. *See* Stipulation ¶¶ 18, 19.

[3] BCGI believes that Smith Bagley had knowledge much earlier; however, for purposes of the statute of limitations analysis, BCGI will use only the dates expressly admitted by Smith Bagley.

**C.**     **Specific Terms Of The Prepaid Connection Agreement**

The PCA contains several important terms and conditions:

- Software Restriction

Customer is granted a personal, nontransferable, <u>non-exclusive, license to use, for the term of this Agreement, for its internal business purposes only in connection with the Equipment</u>, only the number of copies of such Software that are provided by BCGI and only on the Equipment on which it is originally loaded, installed, or mounted by BCGI.   Customer may not copy (except a reasonable number of copies for backup or archival purposes) such Software for any purpose without BCGI prior written consent.   Customer may not remove such Software or attempt to execute such Software on any equipment other than the Equipment on which such Software was originally loaded, installed or mounted by BCGI.

. . . .

Customer may not resell or otherwise transfer the Software without BCGI's prior written consent that shall not be unreasonably withheld.

. . .

*See* Ex. A (PCA) § 9 (emphasis added).

- Disclaimer of Warranties

THE WARRANTIES SET FORTH HEREIN ARE <u>IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY</u>, WITH RESPECT TO THE EQUIPMENT, SOFTWARE, SERVICES OR OTHER ITEMS PROVIDED HEREUNDER.    BCGI  SPECIFICALLY  DISCLAIMS  ALL  IMPLIED WARRANTIES  OF  MERCHANTABILITY  AND  FITNESS  FOR  A PARTICULAR PURPOSE.

*See* Ex. A (PCA) § 10 (emphasis added).   A review of the PCA reveals that no affirmative

warranty of title is made with respect to anything provided by BCGI under the PCA.

- Patent and Copyright Indemnity

BCGI will defend or settle at its expense any action brought against Customer to the extent based upon a claim that the Equipment or Software purchased or licensed and paid for by Customer infringes any duly issued United States patent or copyright, and BCGI shall pay any settlements entered into or final judgments award to the extent based thereon . . . .

If Customer's Equipment or Software becomes, or in BCGI's opinion may become, subject to any claim of infringement of any duly issued United States patent or copyright, BCGI at its option may:

(i)     procure for Customer the right to continue to use the Equipment or Software,

(ii)    replace or modify the Equipment or Software so that it is non-fringing; or

(iii)   if neither of the foregoing alternatives is reasonably practical, BCGI may remove the Equipment or Software and refund the applicable Purchase Price and Installation Charge payments made to BCGI, reduced by an amount equal to the depreciated portion of the payments, calculated on a five (5) year straight line basis.

. . .

THE FOREGOING STATES THE SOLE AND EXCLUSIVE LIABILITY OF BCGI AND THE EXCLUSIVE REMEDY OF CUSTOMER FOR INFRINGEMENT OR CLAIMS OF INFRINGEMENT OF ANY THIRD PARTY PATENT, COPYRIGHT, OR OTHER INTELLECTUAL PROPERTY RIGHT BY THE EQUIPMENT OR SOFTWARE.

*See* Ex. A (PCA) § 14 (emphasis added); *see also*, Counterclaim ¶ 13; Stipulation ¶ 7.

- Limitations of Liability

IN NO EVENT SHALL BCGI'S LIABILITY UNDER, ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING OBLIGATIONS UNDER SECTION 17, EXCEED THE AMOUNT PAID TO BCGI BY CUSTOMER FOR THE EQUIPMENT, SOFTWARE, OR SERVICES GIVING RISE TO SUCH LIABILITY.  IN NO EVENT WILL BCGI BE LIABLE FOR LOST PROFITS, LOSS OF USE, LOSS OF DATA, COST OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, UNAUTHORIZED CALLS THAT MAY BE MADE USING THE SYSTEM AND CHARGED TO CUSTOMER, ANY TELEPHONE TOLL FRAUD, OR ANY OTHER SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES, HOWEVER, CAUSED, AND ON ANY THEORY OF LIABILITY, WHETHER FOR BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR OTHERWISE.  THESE LIMITATIONS SHALL APPLY WHETHER OR NOT BCGI HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.  THE PARTIES ACKNOWLEDGE THAT THE PURCHASE PRICE WAS DETERMINED BASED UPON THE FOREGOING LIMITATION OF LIABILITY.

*See* Ex. A (PCA) § 16 (emphasis added).

## III.
## LEGAL ARGUMENT

**A.**   **SMITH BAGLEY'S COUNTERCLAIMS SHOULD BE STRICKEN AS UNTIMELY.**

There is no question that Smith Bagley's counterclaims should be stricken as untimely because they are compulsory and should have been filed with its Answer nearly two years ago. BCGI filed its Complaint on April 17, 2007.  Thereafter, on May 17, 2007, Smith Bagley filed an Answer to the Complaint, but no compulsory counterclaims.  In late October 2007 – five months later – the Court referred this matter to mediation, and the parties engaged in that process; however, there was no request nor court order permitting Smith Bagley to delay in the filing of compulsory counterclaims.  Settlement talks failed and the parties notified the Court of the failure on July 2, 2008.

It was not until March 13, 2009 that Smith Bagley filed counterclaims in this matter, almost two years after its Answer was filed and more than eight months after the settlement talks failed.  These counterclaims are "compulsory," arising out of the same transaction or occurrence – indeed from the same contract – and therefore should have been filed with Smith Bagley's answer.  *See* Fed. R. Civ. P. 13(a); *Comer v. Fistere*, 103 A.2d 206, 207-8 (D.C. App. 1954) (holding that a claim "attacking the same contract" that was the subject of the original claim was compulsory and further holding that "the words 'transaction or occurrence' have been liberally interpreted by the courts to avoid a multiplicity of suits and to provide a means of bringing all materially or logically related claims together into a single action.").  Smith Bagley's failure to file the counterclaims in a timely manner cannot be categorized as inadvertent or a mere oversight and, thus, its Counterclaim should be stricken.

**B.**    **PLAINTIFF'S CLAIMS ARE TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

Moreover, Smith Bagley's counterclaims are barred by the statute of limitations and should be dismissed.  The affirmative defense of statute of limitations via a Fed. R. Civ. P. 12(b)(6) motion may be raised when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D. D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n. 11 (D.C. Cir. 1989)).

Where, as here, there is diversity of citizenship among the parties, the applicable choice of law rules are those of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Lee v. Flintkote Co.*, 593 F.2d 1275, 1278-79 (D.C. Cir. 1979).   Although the District of Columbia is not a state, the principle applies.  *See Lee v. Flintkote Co.*, 593 F.2d 1275, 1278-80 (D.C. Cir. 1979).  "Under customary choice of law principles, the laws of the forum . . . apply to matters of procedure . . . and, save where limitations is part of the cause of action itself, [a] limitation on the time of suit is procedural and is governed by the law of the forum." *Jing W. Huang v. D'Albora*, 644 A.2d 1, 4 (D.C. 1994) (internal quotation marks and citations omitted). Although the PCA states that "[t]his Agreement shall be governed by the laws of the Commonwealth of Massachusetts, without reference to its conflicts of law rules," Ex. A (PCA), § 17(c), such a contractual choice of law provision is construed to relate only to substantive, and not procedural, laws of the selected state.   *Int'l Techs. Integration, Inc. v. The Palestine Liberation Org.*, 66 F. Supp. 2d 3, 9 (D. D.C. 1999) ("[C]hoice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law such as statutes of

limitation.")); *see also Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Science, Inc.*, 858 A.2d 457, 463 (D.C. 2004).   Therefore, the statute of limitations of the District of Columbia applies.

> The District of Columbia Statute of Limitations provides that:
>
>> actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: . . .
>>
>> (7)  on a simple contract, express or implied – 3 years.
>> (8)  for which a limitation is not otherwise specially prescribed – 3 years.

D.C. St. §12-301.   There is no specific tort matching the Mass. Ch. §93A action asserted by Smith Bagley, and, therefore, the three year limitation applies.  *See id*.  Except for specialized cases dealing with recovery of lands, an action of an executor's or administrator's bond, or injury from toxic substances, there is no period longer than three years cited in the D.C. statute of limitations.  *See id*.  Therefore, all of Smith Bagley's causes of action are subject to a three-year period of limitations.

With the possible exception of the unjust enrichment claim, the counterclaims should be tested from the date that the cause of action could be sustained.  *See News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. Ct. App. 2005) ("It is undisputed that the statute of limitations begins to run when a claim accrues, and that a cause of action accrues when its elements are present, so that the plaintiff could maintain a successful suit.") (citing *Hendel v. World Plan Executive Council*, 705 A.2d 656, 660-61 (D.C. 1997); *see also News World, 878 A.2d*  at 1224-37 (applying a "last rendition of service" test rather than the discovery test to a statute of limitations analysis of a counterclaim).

Smith Bagley had, at the very latest, knowledge of its alleged cause of action as of December 20, 2005.[4]  Smith Bagley has admitted as much.  Stipulation ¶ 17.  With respect to the unjust enrichment claim, the counterclaim is somewhat unusual in that it appears to assert that the fees paid were the unjust enrichment (as opposed to an uncompensated service).  At the very latest, the date of termination of the PCA would apply, which was January 31, 2006.  *See* Counterclaim ¶ 31; Stipulation ¶ 18.  Smith Bagley did not file its Counterclaim until March 13, 2009, clearly beyond the three-year period for all of the counterclaims and, therefore, they are time barred.  There is no set of facts under which the three-year time period has not elapsed since Smith Bagley's knowledge of its claims.

Moreover, Smith Bagley's tardy filing of its Counterclaim is not excused by the concept of "relation back" to its Answer.  The D.C. courts have held that "the assertion of a counterclaim must be viewed as an affirmative cause of action and should therefore be tested apart from the primary claim in determining whether the statute of limitations would bar the counterclaim." *Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 830 (D.C. Ct. App. 1972), *cert. denied*, 409 U.S. 1049 (1972) (upholding dismissal of counterclaims because they were insufficiently related to a previously dismissed counterclaim).  The D.C. Circuit has agreed with this view, holding that a "genuine counterclaim, *i.e.*, one that goes 'beyond matters of defense' such as recoupment, 'must be viewed as an affirmative cause of action and should therefore be tested'" separately from the primary claim.  *Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1119 (D.C. Cir. 1997) (quoting *Sears, Roebuck & Co* 290 A.2d at 830).  In its reasoning, the D.C.

---

[4] Using this date gives Smith Bagley the full benefit of the "discovery rule," which may not be applicable to the contract based counterclaims.  For purposes of this Motion, however, this date is used to demonstrate that even after the benefit of the discovery rule is provided, Smith Bagley's claims are still time barred.  BCGI reserves the right to argue that Smith Bagley had much earlier knowledge of the alleged breach and that the discovery rule should not be applied.

Circuit held that "a necessary premise of the entire discussion [in *Sears*] was that the filing of the complaint did not toll the statute on the counterclaim." *Hartford*, 127 F.3d at 1118-19. Therefore, Smith Bagley's counterclaims must be tested against the statute of limitations as of the date of their filing (March 13, 2009).  Most glaringly, the business tort asserted by Smith Bagley for violations of Mass. Gen. Laws ch. 93A, §§ 2 and 11 is an entirely new, affirmative cause of action.  Smith Bagley never alleged "unfair" or "deceptive" trade practices by BCGI in its Answer.  Indeed, it does not even identify them with any specificity in its Counterclaim (other than to incorporate the entire set of facts into the cause of action).  This business tort cause of action clearly goes well beyond "matters of defense" to a breach of contract case and must be tested by the three-year statute of limitations.

With respect to the other causes of action, only now does Smith Bagley assert that it was damaged and that BCGI was unjustly enriched, breached any covenant of good faith and fair dealing or that BCGI breached any warranty of title.  Although Smith Bagley raised the defenses of "breach of contract" (Fifth Defense; Sixteenth Defense) and "illegality" (Tenth Defense)**,** Smith Bagley offered no specific facts or allegations whatsoever regarding these defenses. These bald defenses, with no corresponding factual allegations, cannot be enough, however, to provide a foundation for later claims of unjust enrichment, affirmative breach of contract, breach of good faith and fair dealing or warranty of title.  Therefore, to the extent any of these constitute affirmative claims – and not simply defenses – they must be barred under the *Sears* and *Hartford* standard.  Again, Smith Bagley had ample time and opportunity to file these claims but failed to do so.

**C.**   **ALL OF SMITH BAGLEY'S COUNTERCLAIMS ARE BASED ON A FAULTY LEGAL PREMISE AND SHOULD BE DISMISSED.**

Smith Bagley's counterclaims are not only procedurally defective, but are substantively deficient as well.   A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).   In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor.   *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242.   The court need not accept as true any inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.   A pleading "needs some information about the circumstance giving rise to the claims."   *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 17 n. 4 (D.C. Cir. 2008).   While detailed facts are not necessary, the allegations must "possess enough heft to show that the pleader is entitled to relief."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations omitted).   The facts alleged must be sufficiently detailed "to raise a right to relief above the speculative level." *Id.* at 555.

At the heart of all of Smith Bagley's counterclaims is its theory that BCGI did not have the "legal right" to perform under the PCA.   *See* Counterclaim ¶¶ 39, 47, 54 and 67.   Smith Bagley alleges that "the central premise of the PCA was that BCGI had the legal ability to provide the Software to Smith Bagley."   Counterclaim ¶ 39.

Critical to its theory is Smith Bagley's attempt to distort and enlarge the standard U.C.C. warranty of title to cover what was provided by BCGI under the PCA.   Mass. Gen. Laws, Ch. 106, § 2-312.   This is a gross extension of such a warranty, as part of what was provided was a

complex set of software, equipment and services to which traditional notions of title and ownership – and the U.C.C. – do not apply.  *Mattoon v. City of Pittsfield*, 56 Mass. App. Ct. 124, 141 (Mass. App. Ct. 2002) ("In contrast to the sale of goods, the rendition of services is not covered by art. 2 of the code."); *see also White v. Peabody Constr. Co.*, 434 N.E.2d 1015, 1021-22 (Mass. 1982); *Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co.*, 520 N.E.2d 1321, 1324 (Mass App. Ct. 1988).  Therefore, no "warranty of title" can be applied to the entirety of what was provided by BCGI under the PCA.

To the extent such warranty is applicable to this transaction it has been, by agreement, excluded by the parties, or at the very least, modified.  The same provision of the Massachusetts U.C.C. providing for a warranty of title (§ 2-312) allows the parties to exclude or modify the warranty by "specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have."  Mass. Gen. L. 106, § 2-312(b)(2).  Here, the parties expressly agreed that the warranties provided in the PCA were in lieu of all express, implied and *statutory* warranties.  Ex. A (PCA), §10.

The parties further agreed, under Section 14 of the PCA, to specific limited remedies regarding claims of patent or copyright infringement made by third parties.  Thus, there can be no question that the parties negotiated a provision addressing the very title concern Smith Bagley now asserts – and, therefore, the parties excluded or modified such warranty with respect to such claims.  Smith Bagley expressly agreed that in the event of such a claim of infringement its sole remedy for the infringement claim would be to have BCGI defend Smith Bagley in the event Smith Bagley was also sued.  Ex. A, §14 ("EXCLUSIVE REMEDY OF [SMITH BAGLEY] FOR INFRINGEMENT OR CLAIMS OF INFRINGEMENT OF ANY THIRD PARTY

PATENT, COPYRIGHT, OR OTHER INTELLECTUAL PROPERTY RIGHT BY THE EQUIPMENT OR SOFTWARE.").   By agreeing upon these express provisions – and acknowledging that claims of infringement may be brought by others – the parties understood and agreed that BCGI was offering the goods and services subject to any such claims.  Therefore, any warranty of title has been expressly excluded, or at least modified to exclude any warranty regarding third party patent and copyright claims – the very "warranty" Smith Bagley seeks to assert in its Counterclaim.

Moreover, Smith Bagley's assertions regarding title and "legal right" attempt to create a legal obligation where none exists and completely mischaracterize the type of transaction entered into between the parties.  The PCA is an agreement covering a complex system, including the license of software, coupled with the provision of certain equipment and services.  Ex. A (PCA) ¶ 1, Exhibit 1.  One cannot obtain an affirmative "legal right" to provide such equipment, software and services.  Indeed, even obtaining a patent covering such a system does not provide a patentee with such an affirmative "legal right."  *See, e.g.*, *Leatherman Tool Group Inc. v. Cooper Indus., Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997) ("In fact, the federal patent laws do not create any affirmative right to make, use, or sell anything"); *Studiengesellschaft Kohle mbH v. N. Petrochemical Co.*, 784 F.2d 351, 357 (Fed. Cir. 1986) ("The patent grant is not for the right to use the patented subject matter, but only for the right to exclude others from practice of the patented subject matter").  Because a patent does not confer a positive right to exploit the patent, a patent license cannot grant any such right. *See, e.g.*, *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1335 (Fed. Cir. 2008) (quoting *Bloomer v. McQuewan*, 55 U.S. 539, 549 (1852)) ("'The franchise which the patent grants consists altogether in the right to exclude every one from making, using, or vending the thing patented, without the permission of

the patentee.  This is all that he obtains by the patent'"").  For this reason, parties to transactions such as this one often address the issue of potential patent or copyright infringement in their agreement, just as was done in the PCA.

To require a provider of technology goods and/or services to obtain or possess an affirmative "legal right" to provide such goods or services would be implausible, impractical and unsupported by the law.   Such a theory necessarily would call into question all existing technology-based contracts.   Under Smith Bagley's theory, any provider of technology-based goods and services would be subject not only to infringement actions brought by intellectual property owners, but also to claims for retroactively breaching their contracts back to their date of origination if there were a finding of infringement.  Even a patent licensee – a party that has specifically licensed a patent – is not entitled to claim such retroactive liability of the patent licensor.  The Circuit courts are in agreement that even after it has been adjudicated that a patent is invalid, a patent licensee is not entitled to recoup the royalty fees it paid to the patent licensor – because the licensee already received the benefits of the agreement.  *See e.g., St. Regis Paper Co. v. Royal Indus.*, 552 F.2d 309, 313 (9th Cir. 1977), *cert. denied*, 434 U.S. 996 (1977); *Zenith Labs. v. Carter-Wallace*, 530 F.2d 508 (3rd Cir. 1976), *cert. denied*, 429 U.S. 828 (1976); *Troxel Manfg. Co. v. Schwinn Bicycle Co.*, 465 F.2d 1253 (6th Cir. 1972).

The counterclaims are similarly unsupportable in that they allege that BCGI never had the "legal right" to provide the equipment, software and services under the PCA simply because there was a finding of infringement in 2005 (although a final decision on the matter was never reached).  Smith Bagley has no legal basis for looking back to the beginning of the PCA and claiming that the agreement was breached all along on the basis of this later finding of infringement.  Smith Bagley appears to have developed this convoluted theory in an attempt to

support its improper termination of the PCA because *at no time was BCGI or Smith Bagley prevented from using the technology encompassed by the PCA.*

Smith Bagley's entire Counterclaim relies upon the theory that the patent infringement case, and judgment resulting therefrom, retroactively rendered BCGI with no "legal right" to provide such goods and service.  As shown, however, the parties anticipated such a claim of infringement and by language and circumstance, the parties expressly excluded, or at the very least modified, any warranty of title that might exist pursuant to Section 2-312.  Smith Bagley cannot now complain that a full warranty of title exists in the PCA when the parties clearly agreed otherwise.  BCGI had no obligation to obtain a "legal right" to perform under the PCA – nor does there exist any legal mechanism for obtaining such a right.  Moreover, a finding of patent infringement (which never reached a final decision and was never fully enforced against BCGI) cannot retroactively give rise to Smith Bagley's claims that BCGI breached the PCA, any warranty of title, or the duty of good faith and fair dealing.  Therefore, Smith Bagley's counterclaims, all of which rely on this theory, should be dismissed.

**D.     ABSENT A VIABLE CLAIM FOR DAMAGES, THE COUNTERCLAIMS MUST FAIL.**

Smith Bagley has suffered no damages recoverable under the contract or otherwise, and therefore, its Counterclaim must be dismissed as failing to state a claim for which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In its Counterclaim, Smith Bagley asserts no specific damages other than to mention its "costs of migrating to another provider." *See* Counterclaim ¶ 27.  It further references the total payments it made to BCGI under the PCA.  *See* Counterclaim ¶¶ 17, 53.  Importantly, however, although Smith Bagley alleges that BCGI "exposed" Smith Bagley to liability to Freedom Wireless, it does not even allege that any actual damages were incurred by Smith Bagley related to such exposure.  *See, e.g.,* Counterclaim ¶ 20.  Smith Bagley

must be able to prove damages in order to have viable cause of action.  *See, e.g., Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 124 n.182 (D. Mass. 1998) ("The law . . . requires [a claimant] to prove, as an element of its case, the extent to which it was damaged by the fraud or the breach.") (*citing Fleet Nat'l Bank v. Anchor Media Television, Inc.*, 45 F.3d 546, 560 (1st Cir.1995) (emphasis in original)).

1. <u>Having Accepted the Fruits of the Contract, Smith Bagley Cannot Now Claim Damages As If It Did Not Receive Such Performance.</u>

Nowhere does Smith Bagley allege that the software, equipment or services were not provided or that they did not do what they were supposed to do.  Smith Bagley paid and BCGI fully performed by providing the software and services up through the time Smith Bagley improperly terminated the PCA.  Indeed, Smith Bagley could have enjoyed the benefits of the PCA through the end of the term of the PCA (March 31, 2009).  The PCA was an agreement for the payment of fees by Smith Bagley in exchange for a complex system of equipment, software and services provided by BCGI.  *See* Ex. A (PCA) § 1, Exhibit 1.  Once the term of the Agreement lapsed, services would no longer be provided and Software would no longer be licensed to Smith Bagley.  *See, e.g.,* Ex. A (PCA) § 9 (software license terminates at end of PCA term).  In effect, the benefits received by the parties were for a limited period of time – during the term – and no longer.  Smith Bagley was never prevented from enjoying the benefits of the PCA during the term and it presumably benefited by serving, and profiting from, its customers.  As Smith Bagley received full performance from BCGI through the date of Smith Bagley's improper termination of the PCA, Smith Bagley could not have been damaged.  *See, e.g., John Hetherington & Sons, Ltd. v. William Firth Co.*, 95 N.E. 961, 964 (Mass. 1911) ("The fundamental principle of law upon which damages for breach of contract are assessed is that the

injured party shall be placed in the same position he would have been in, if the contract had been performed . . . .").

Moreover, with respect to it unjust enrichment claim, Smith Bagley must show "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law." *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005). Smith Bagley has no claim that it was impoverished or that BCGI was enriched – the parties acted under the PCA as expected for years – Smith Bagley paying fees and BCGI providing the software and services. Indeed, if the fees paid by BCGI were returned to Smith Bagley, it is BCGI that would be impoverished and Smith Bagley unjustly enriched.

2.    Even if Smith Bagley Had Sustained Damage, the Contract Specifically Disclaims Recovery of Consequential Damages.

Damages that Smith Bagley appears to assert have been expressly disclaimed under the PCA. Under Massachusetts law, sophisticated commercial parties are free to limit remedies available under contract. Mass. Ch. 106 § 2-719 (allowing the parties to limit damages and remedies by contract) (to the extent applicable to the PCA); *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 548 N.E.2d 182, 185 (Mass. 1990) (upholding exclusion of consequential damages even where the remedy fails of its essential purpose and finding that "consensual allocation of risk is not contrary to public policy.") (citing *Minassian v. Ogden Suffolk Downs, Inc.*, 509 N.E.2d 1190, 1192 (Mass. 1987)). The PCA bars recovery by Smith Bagley for "cost of procurement for substitute goods or services," "lost profits," and "special, incidental, indirect or consequential damages" with respect to any "theory of liability, whether for breach of contract, tort . . . or otherwise." Ex. A (PCA) § 16. Moreover, because the parties expressly acknowledged that these limitations were necessary to establishing the fees under the PCA, *id.*,

Smith Bagley has already received the benefit of the bargain for these limitations.   These exclusions cover any of remaining damages Smith Bagley can assert for a breach of contract as they would be consequential.   Similarly, Smith Bagley's cost of migrating to another service would simply be the procurement of substitute goods and services – also expressly disclaimed.

3.      The Business Tort Claim Must Also Be Dismissed for Lack of a Viable Damages Theory and for Violation of the Economic Loss Rule.

Similarly, Smith Bagley's Chapter 93A claim must be dismissed because Smith Bagley's alleged damages were either disclaimed or barred by the economic loss rule.   It is clear that damages are a necessary element of the Defendants' Chapter 93A claim.  *Weeks v. Harbor Nat'l Bank*, 445 N.E.2d 605, 607 n.2 (Mass. 1983) ("[D]amages are an essential element of the cause of action" under Chapter 93A, § 11.); *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 560 N.E.2d 122, 125 (Mass. App. Ct. 1990) ("In making out a c. 93A claim, the plaintiff must show a loss connected with the unfair or deceptive act."); *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 26 (1st Cir. 2001) (affirming summary judgment for defendant on claim under Chapter 93A, section 11 where plaintiff failed to even argue he had suffered damages resulting from defendant's failure to warn) (citing *Weeks,* 445 N.E. 2d at 607 n.2 (Mass. 1983)).   Again, each party received the benefit it was due during the term (until the improper termination by Smith Bagley), and any damages resulting from Smith Bagley's termination (even if such termination were proper) are consequential and have been disclaimed.

In *Canal Elec. Co. v. Westinghouse Elec. Corp.* the Massachusetts Supreme Court explained that a plaintiff "could validly waive its c. 93A, § 11, claim" under a limitation of liability clause.   548 N.E.2d 182, 187 (Mass. 1990).   The underlying policy was that the plaintiff's claim could be waived because it "arises from the breach of warranty and merely is an alternate theory of recovery under the contract" and "the dispute is a purely commercial one that

does not affect the public interest." *Id.* at 188.  Similarly, Smith Bagley agreed to certain

limitations on liability in the PCA which disclaimed consequential damages, including under

tort.  And now, as was the case in *Canal*, Smith Bagley attempts to transform its breach of

contract and breach of warranty of title claims into a tort claim under Chapter 93A, despite the

fact that such claims were expressly disclaimed.  Even if Smith Bagley were found to have direct

damages, Smith Bagley would not be entitled to recovery because such damages could only

amount to "economic damages . . . which cannot be recovered in an action under Chapter 93A,

§ 11." *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 756 F. Supp. 620, 630 (D. Mass. 1991).

"Tort law was not designed for the recovery of pecuniary losses; warranty law, conversely,

guarantees the benefit of the bargain." *Id.* at 630.

Smith Bagley has failed to plead plausible damages and in any event has provided no

specificity as to damages in presenting its claims.  As shown above,  all of the damages that can

be inferred from Smith Bagley's counterclaims comprise damages that either have been

expressly disclaimed or cannot be awarded because they have no basis in the law.

## E.   SMITH BAGLEY'S COUNTERCLAIMS CONTAIN FURTHER FATAL DEFECTS.

### 1.   Count II (Breach of Covenant of Good Faith and Fair Dealing)

Smith Bagley alleges a failure on the part of BCGI to notify Smith Bagley of the patent

infringement claim.  Ex. A (PCA) ¶ 49.  Although BCGI believes that Smith Bagley had notice

of the claim (or through any reasonable due diligence on Smith Bagley's part, would have), no

such duty exists.  There is no provision in the PCA requiring such notice.  To the extent that

Smith Bagley's claims rest on such a duty, it should be dismissed.

Furthermore, a claim of breach of duty of good faith and fair dealing has to allege

something different from a breach of contract claim.   "It has become common practice by

plaintiffs bringing breach of contract claims automatically to pursue claims for breach of the covenant of good faith and fair dealing. Often, these claims are frivolous, baseless, and perfunctory, and become unjustifiably entangled in legitimate breach of contract claims. Conceptually, claims for breach of the implied covenant of good faith and fair dealing are distinct from simple breach of contract claims and require additional factual allegations of unfairly leveraging the contract terms for undue economic advantage." *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 229 (D. Mass. 2005). "No claim for breaching an implied covenant of good faith and fair dealing need be pled unless the factual circumstances actually warrant the additional claim." *Id*. Here, Smith Bagley has not made any factual allegations that BCGI unfairly leveraged the contract terms nor has it made any factual allegations separate and apart from its breach of contract claim that would distinguish Count II as a distinct claim. Because Smith Bagley has not pleaded factual allegations that if proven would support a claim of breach of the duty of good faith and fair dealing separate from a breach its contract claim, Count II must be dismissed.

2.     Count IV (Violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11)

Smith Bagley has failed to allege the required elements of this cause of action. Section 11 provides: "No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred <u>primarily and substantially within the commonwealth</u>." Courts have thus required a party making a claim under this statutory provision to plead that the acts alleged to give rise to a violation did in fact occur "primarily and substantially" in Massachusetts. *See Harbourvest Int'l Private Equity Partners II-Direct Fund, L.P. v. Axent Tech., Inc.*, 12 Mass. L. Rptr. 323, 2000 WL 1466096, at *8 (Mass. Super. Aug. 31, 2000) ("To maintain a claim under G.L. c. 93A, § 11, a plaintiff must allege that the unfair and deceptive acts occurred 'primarily

and substantially' in Massachusetts.");   *In re America Online, Inc.*, 168 F.Supp.2d 1359, 1380 (S.D. Fla. 2001) ("a plaintiff must allege that the unfair and deceptive acts occurred 'primarily and substantially' in Massachusetts.").   Therefore, Smith Bagley's counterclaim is defective on its face with respect to this cause of action.

Other than reasserting the entirety of its allegations as part of Count IV, Smith Bagley offers no specific allegations or factual circumstances giving rise to its tort claim.   Massachusetts case law holds that not every breach of contract claim can be turned into a tort action.   "Simple breach of contract is not sufficiently unfair or deceptive to be alone a violation of Chapter 93A." *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 56 (1st Cir. 2007) (citing *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir.2000));   *Lyle Richards Intern., Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 115 (1st Cir. 1997) ("a breach-of-contract claim, without more, cannot be converted into a tort claim") (citing *Redgrave v. Boston Symphony Orchestra, Inc.*, 557 F. Supp. 230, 238 (D. Mass. 1983)).   To the extent Smith Bagley is simply revamping its contract claim into a tort claim, it should be dismissed.

## IV.
## CONCLUSION

In sum, Smith Bagley's claims are untimely, time barred, fail to state a claim upon which relief can be granted and substantively deficient.   For the above reasons, BCGI respectfully requests that Smith Bagley's entire Counterclaim be dismissed with prejudice.

Dated: April 10, 2009                 CELLULAR    EXPRESS,    INC.    D/B/A    BOSTON
                                      COMMUNICATIONS    GROUP    AND    BOSTON
                                      COMMUNICATIONS GROUP, INC.
                                      By Counsel

                                                             /s/
                                      _____
                                      Attison L. Barnes, III (D.C. Bar. No. 427754)
                                      Christopher Mills (D.C. Bar. No. 492840)
                                      Jamie A. Aycock (D.C. Bar. No. 974343)
                                          WILEY REIN LLP

                                      1776 K Street, NW
                                      Washington, DC 20006
                                      Tel.: 202.719.7000
                                      Fax: 202.719.7049
                                      abarnes@wileyrein.com
                                      cmills@wileyrein.com
                                      jaycock@wileyrein.com

                                      ***Attorneys for Plaintiff Cellular Express, Inc.
                                      d/b/a Boston Communications Group and
                                      Boston Communications Group, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of April, 2009 a copy of the foregoing document was served by the Clerk of the Court's CM/ECF system upon the following:


Leo G. Rydzewski
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, NW
Suite 100
Washington, DC 20006-6801
(202) 457-7141
(202) 955-5564 (fax)
leo.rydzewski@hklaw.com

James D Smeallie
Elizabeth M. Mitchell
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
(617) 523-6850 (fax)
jd.smeallie@hklaw.com


/s/
—————————————————
Attison L. Barnes, III (D.C. Bar. No. 427754)
Christopher Mills (D.C. Bar. No. 492840)
Jamie A. Aycock (D.C. Bar. No. 974343)
WILEY REIN LLP

1776 K Street, NW
Washington, DC 20006
Tel.: 202.719.7000
Fax: 202.719.7049
abarnes@wileyrein.com
cmills@wileyrein.com
jaycock@wileyrein.com

***Attorneys for Plaintiff Cellular Express, Inc.
d/b/a Boston Communications Group and
Boston Communications Group, Inc.***
